Good morning. This is Judge Katzmann and I am joined by Judge LaValle and Judge LaWyer. and the calendar today is Trump v. Vance. That will be orally argued and then three cases are on submission. Pappas v. Chappeas, Malcolm v. Association of Supervisors and Harnage v. Kenney. We will hear Trump v. Vance and the way that we will proceed is that each side will have two minutes of uninterrupted argument and then there will be questioning in order of with Judge LaValle first, then me and then Judge LaWyer. Mr. Consovoy, you will begin and you have reserved three minutes for rebuttal. Judge LaValle Thank you, Your Honor, and good morning. It may have pleased the court. On remand, the President filed an amended complaint raising two claims. First, that the subpoena at issue is an overbroad fishing expedition and second, that it was issued in bad faith in order to harass the President. The District Attorney concedes that the Supreme Court has authorized the President to bring these claims in federal court on remand. The only issue then on appeal is whether the allegations of overbreath and bad faith are plausible. The District Court's determination that they are not could be reversed for several reasons. First, the Court stacked the deck against the President by asserting that these claims are a disguised attempt to relitigate categorical immunity. As the District Attorney also concedes, they plainly are not. Second, the Court violated binding precedent by turning the plausibility standard into a probability requirement, by drawing emphasis against the President, by crediting one plausible allegation over another, and by allowing the District Attorney to deploy extrinsic evidence at the pleading stage. Third, and last, the Court denied the President a fair chance to contest the legality of the subpoena via a streamlined evidentiary process. That's how subpoena challenges, which are intensely factual, are typically adjudicated. The President's challenge should be no exception. And had the District Attorney answered, as he should have, that process might already have been completed. For all these reasons, the judgment below should be reversed, and the case should be remanded for further proceedings. Thank you. Judge LaValle. Well, I'm a little puzzled because, um, because conventionally, in order to quash a subpoena, or to escape the obligation to perform the subpoena, one must make a, a showing, one must make a showing that would support the proposition that the subpoena was uttered, was issued in bad faith, uh, or, or was overbroad, whatever the ground is. Uh, here, it seems to me that as a result of the District Attorney's, I don't, I'm not sure whether it's as a result of the District Attorney's concession that he will not enforce the subpoena until the case is terminated. Here, we are, we are pondering a question that seems to be irrelevant, and the question, question whether the complaint plausibly pleads, um, um, the claim, uh, is, is not the issue that we should be addressing. The issue we should be addressing is whether the plaintiff, in an effort to avoid compliance with the subpoena, has shown that there is a, that there is a defect of overbreadth or bad faith. Um, but, uh, I, I would like to combine that with the question of, um, why isn't on the issue of, of plausibility of meeting standard, and what I see in Twombly and Iqbal, um, uh, you don't meet that standard if there's an obvious alternative explanation that is not, which is not illegality. Um, so, you want to address that, please? Uh, yes, Your Honor. Thank you for, for both questions. Let me begin with the first one first. So, I mostly agree that, I wouldn't say plausibility is irrelevant. I would say rather straightforward. Uh, I think what is different here, I think will help explain how we are where we are, is we agree that ultimately there is an evidentiary burden that has to be met to show bad faith and overbreadth. But this is a 1983 action in federal court, under the federal rules of civil procedure. And the Supreme Court and this court have both held, and the district attorney concedes, that is the appropriate posture for this case to be in right now. Therefore, the ordinary rules of 12b6 have to apply. Now, as I mentioned in my opening, I think the district attorney should have answered, this is an obvious factual dispute, and had he done so, we'd be in a proceeding, Your Honor, that looks mostly like, perhaps exactly like, an ordinary motion to quash proceeding, only it would have been a summary judgment. So, I agree. You haven't made such a motion. You haven't set forth, you haven't set forth evidence that could justify, uh, staying the subpoena or quashing it. So the, so, so far as I can see, so far as I can see, um, the staying of the subpoena is solely by virtue of the, of the district attorney's decision. I mean, there's never been a court ruling that the subpoena is stayed. The only thing that is staying the subpoena is the district attorney's, not, not undertaking the question of his own volition. It is true, Your Honor, that we have not had to litigate on appeals, interim relief, because of the agreement of the district attorney, but whether the subpoena is ultimately quashed is a merits question that will be, ought to be resolved at summary judgment, not based on a reading of plausibility that changes the rules of rule eight, and would create a circuit split. There are no heightened pleading standards under rule eight and Your Honor's question about obvious alternatives. I think what the district attorney and the district court leave out from that question is those obvious alternatives have to come from the four corners of the complaint, not based on speculation and extrinsic evidence that the district attorney would like to introduce at the pleading stage. And nothing in this complaint renders the president's allegation as to the scope, breadth, and propriety of this, of this subpoena implausible. There may be other plausible. I don't think what you said is, is, is, is legally accurate, because Twombly and Iqbal are talking about what is contained in the complaint. And if I'm reading the complaint, one sees that there is an obvious alternative, not consistent with the unlawfulness being claimed in the complaint, then the complaint does, fails to make out, fails to make out the illegality consistent with the plausibility standard. And it seems to me that just reading your complaint, of course, you allege a lot of things, but when a grand jury subpoenas tax returns to say, to say, well, we think that that grand jury isn't interested in tax returns at all. They're only interested in something else that they subpoenaed in the past. And we think that the, or we argue that the, that the subpoena is in bad faith because it was copied, because it was largely copied in its substance from another, from another governmental subpoena seeking the material. There are such obvious, such obvious alternatives. There's simply no reason to go speculating into the accuracy of the, of these highly contrived allegations. With respect, I don't believe the allegations are contrived. We have alleged that the investigation has a certain scope. That allegation has to be accepted as true. And once it is, not even the district attorney asserts that the claims are implausible, nor could he. If the investigation is limited to the, to the 2016 payments that the district attorney concedes are part of the, at least part of the investigation, then there's no dispute on appeal. The subpoena is plausibly overbroad and plausibly in bad faith, but the district attorney wants to do. You agree. Do you not that the president is being judged in this standard exactly like an ordinary citizen? We, we don't, we don't agree with that, but we don't, I don't think it matters on appeal. Uh, with respect to the Supreme court has said that with special privilege as president of the United States, he's in the posture of an ordinary citizen arguing those things. Isn't that the gist of the Supreme court's holding? Not in my view, your honor, the court also cited to Cheney and said in no case would the president be considered like an ordinary litigant. But again, I don't think it matters for appeal. If the court were to adopt, uh, what that view that he's treated like an ordinary citizen, he still wins here. This is just plausibility. Uh, I just think it's hard. It's impossible for the district attorney to, to argue that it is implausible that a subpoena copies from Congress that is alleged to be about one issue from one year, uh, is not overbroad and not at least plausibly in bad faith. And, and this should have just been resolved through expedited summary judgment on the merits. I would yield to, to judge. Thank you. Um, uh, counselor, how would you respond to the argument that, uh, the, uh, allegation that the scope of the grand jury's investigation is limited only to certain payments made by Michael Cohen in 2016 is, is undermined by the very news article from which this allegation is drawn. The New York times article, which I understand and correct me if I'm misunderstanding is the main basis for that allegation that the scope of the grand jury investigation is limited only to this 2006 Michael Cohen payments based elsewhere. And I quote that it was unclear if the broad scope of the subpoena indicated that the district attorney had expanded his investigation beyond the actions taken during the 2000s in campaign. So doesn't that article on its own terms that New York times article on its own terms, um, significantly, uh, uh, undermined the plausibility of your assertion. I know your honor, I actually think it confirms it as we, uh, explained in detail in our, in our reply brief. So let me begin by saying it is not the prime basis for the allegation. I would point the courts to paragraph 12 to 15 of the second amended complaint. The basis for it being limited to the Colin payments, uh, are one that that was the impetus for the investigation to, it was the sole subject of the subpoena to the Trump organization. And third, this subpoena was only issued after there was a dispute over, uh, whether tax returns were included in that subpoena. And so we think there's an obvious relationship between the two. Now, as to the article, the article says exactly what your honor describes it as saying. And as we've explained in our papers, we think it goes beyond the record to quote the parts that were not included in the complaint, but even accepting that as appropriate, it says exactly what our Colin payments. And then it is unclear whether it has expanded beyond that. Meaning it may be plausible for it to have expanded, but it is also plausible that it has not. That's what unclear means. And this court has held time and again in cases like Phelps and the on bonk Ashcroft case and the many others we cite that a complaint cannot be dismissed because there are competing plausible explanations. And that's at most what we have here. So in, uh, in paragraph 11 of, of the second amended complaint, uh, the allegation is made that the district attorney's office opened an investigation at issue in the summer of 2018. In paragraph 17 to 18, the allegation is that the district attorney issued a grand jury subpoena to the May stars in August 29th, 2019. Is it plausible to assume that the scope of the investigation remained limited only to the 2016 Michael Cohen payments for more than a year? It is your honor. Cause if you look back one paragraph to paragraph 13, the subpoena to the Trump organization was August 1st, 2019. And that one is limited solely to the Colin payments. And there's no disagreement about that. It's on the face of the pages three and four of the second amended complaint. And then 30 days later, the subpoena goes out to Mays ours. And again, your honor, it's, is it plausible? Could someone create, construct an argument that it is broader? I'm sure, I'm sure the district attorney can, but that doesn't defeat the plausibility of it having not explained it. Now, uh, uh, one of your theories of bad faith is that the district attorney issued the Mays ours subpoena in, uh, as you put it, retaliation for the president's refusal to produce his tax returns in response to the Trump organization subpoena. But why is it a natural interpretation of these events that the district attorney accepted the president's interpretation of the first subpoena and then issued a new one? Why is this? So, uh, why is that plausibly construed as retaliation? Uh, it's plausibly retaliation, your honor, not because that the district attorney after that dispute soft tax returns. But I would say first it's concerning that he didn't simply reissue the subpoena to the party directly, but what you could have, and then there could have been a, an over, over that instead, the district attorney decided he didn't want to confront the respondent directly and tried to go around them. And of course that led to, uh, you know, an entire issue of litigation that your honor is quite familiar with about who has standing to challenge these subpoenas and, and, and so on and so forth. What makes it plausibly retaliatory though, primarily is the scope of the new subpoena. It wasn't just over the disputed item. In fact, the disputed item is the last tacked on issue to an otherwise entirely federally based, uh, subpoena from the house oversight committee. And the idea that because of the dispute over tax returns, the district attorney thought it was appropriate to simply photocopy a congressional subpoena about hotels in Washington DC and businesses in Indonesian Ireland is, is, is totally unacceptable. And it's at least plausible that that was done in Bethlehem. Yeah. Now, uh, grand juries, as you know, um, are given, um, broad authority, uh, to do their work. And, um, are you asking us to, uh, change the way grand juries, uh, have done their work for time immemorial just because we're dealing with somebody who's president of the United States? We are not your honor. Uh, we are asking for the ordinary rules of when a subpoena is challenged, at least the extended to the president and that he not be deprived of the basic protections that all other citizens receive. Once this case gets passed, what I think is in frankly, an overdone plausibility debate, we will have a proceeding and subpoena will be challenged. And that challenge is measured against a broad standard. We don't, we don't disagree, but the president does at the right, like any other ordinary citizen to have that process play out in an appropriate way and not to be told, uh, by the district court that he's re-litigating immunities when he's not, which is an independent basis reversal. And to be told that his claims are implausible when, when, when they, when they are in fact quite plausible. One last question. Um, if I might, um, uh, looking at the case law, um, and courts have found subpoenas to be temporally overbroad when the time period covers stretches, uh, you know, 10, 15 years or so the seat subpoena here covers not more than nine, nine years. Why should we rule differently? Your honor, because that has to be measured against what the scope of the investigation is. And again, the president has, has alleged, uh, plausibly that the, that the investigation is limited to a certain payments made in a certain year. And, and, uh, it is quite plausible that it is overbroad based on that limited investigation to seek records, uh, for this length of time. But even if the, the, uh, investigation is understood to be a broader than just those poorly, although we think eight years, uh, does suggest overbreath here, but also the geographic reach. Uh, and, and it's just Walker pointed out in the prior hearing on the stay, uh, also the number of different enemies involved. Uh, if you were to look up a definition of a fishing expedition, uh, this is it. Uh, this attorney isn't focused on anything. He basically said, well, here's Congress wants everything you have. Uh, let me have it too, please. And that's just how this works. Judge lawyer. Thank you. Judge Katzman. Uh, and good morning, Mr. Constable. Uh, I'm, I'm interested in further exploring, uh, where you just ended, uh, with this concept of overbreath, uh, and it appears, but you can correct me if I'm wrong, but we may have actually some power, uh, based on, uh, the Harvard's decision, uh, by just friendly to limit the scope of the subpoena as a panel of the court of appeals, uh, under certain circumstances. Uh, do you agree or disagree with that? Yeah, I'm not familiar with the Horowitz decisions. Uh, okay. I would broadly agree. Forget, forget the decision. Do you broadly agree that if we, uh, determine that there's some problem, um, let's say that we agree with you at some level, that there's a problem with the scope of the subpoena that we are empowered to, uh, uh, draw some limitation. You're that, that might be correct. I, I, I have to commit to that, to that, but if I could raise, I think, and the reason I had, I haven't fully explored that question yet is because I think there's a procedural hurdle that for why the court couldn't reach that in this appeal on the merits it's possible. And we'd be, of course, happy to brief it, uh, and take a position at that juncture. But as this court has noted time and again, when a case is dismissed at the pleading stage, uh, that it can't be converted to a merits ruling before the plaintiff has been given the chance to submit a request for discovery and have that request ruled upon under rule 56, we've submitted that motion, that letter motion to the district court, uh, because we had, we saw this concern arising, uh, that motion was denied as moot. And so I don't think this court is positioned procedurally under controlling precedent to, uh, you know, uh, blue pencil, the subpoena at this stage, but potentially on the merits. Set aside, um, those procedural possible procedural hurdles. I understand what you're talking about. So if you were to, um, limit, let's assume that we have, uh, for, uh, the procedural and substantive, uh, ability to do this, but if we were to limit the subpoena to tax returns, uh, that are, uh, for domestic transactions, uh, between 2011 and 2016, uh, would that, would that be something that you could live with? I don't think so, your honor. Uh, why not? You just told me, you just told us that a big part of the problem with respect to the overgrowth issue is that it asks for statements, documents, and so on all around the world. And I'm offering a possible solution of tax returns, um, for a limited period of time. Well, narrower than the nine year period. So we're talking about four or five years, uh, and, um, all domestically based. I understand your honor. I think again, that would be far narrower. There's no question. It's far, it's far less overbroad. I don't disagree. And I understand where you're coming from. Uh, and of course your honor sitting aside the issue of fast paced, which still needs, which would still, no, no, no. Yep. Yep. And then, and so the question becomes when you say domestically, of course, that encompasses numerous enterprises that I think are far beyond anything. The district attorney could be investigating. I just give you one example. Uh, and I use this one because I just think it's the most obvious that, that subpoena that he copied included, you know, some returns for the hotel in Washington, which is, was potentially or purportedly being investigated for federal lease issues in Washington, DC. I still think it's overbroad to include those kinds of things. Is there, is there, is there a request for documents, uh, in this case? Uh, let's assume that, uh, uh, we're just talking about the content. Is there a request for documents that would not, in your view, be overbroad? Well, I have to know. I think the answer is probably no, your honor. And here's why we just go back to the problem. Let's go to the problem. You see the problem. I see why you're concerned. I'd like to try to, to those concerns. Um, so we go back to the basis for the investigation, which at least as alleged is the column payments, the date, the district attorney served as a broad organization, very broad concerning those events, narrow events, but a broad subpoena in terms of encompassing that event, the Trump subpoena didn't litigate that the Trump organization, it began to comply. It was at that point that the district attorney said, well, we also like the tax returns. And there was, there was a two prong really dispute there. One, whether it was encompassed, but two, whether they were even relevant to the dispute. Now, if a court were to determine they are relevant, then that would be one thing, but, uh, it has to be reasonably related. And I think that's my concern. That's why I'm, I'm hesitating. I understand your honors is offering a, a much more narrow or a hypothetical case than the one presented here. But I do think if you go back and look at this story from that perspective, I think when you say reasonably, when you say reasonably related, I thought that's a standard, but I'm going, I'm harking back to my own days as a prosecutor was no conceivable relevance to the matters under investigation. I think if it's, if there's no conceivable relevance, then that, that is, is, is yes. As a matter of law, it is, it is invalid. I do think there are times when it can, there can be problems that fall short of that and it is crossing the line into overbread. But, uh, here, I think the position was and remains that there is no conceivable relevance of the tax returns to that particular issue. But again, this ought to have been sorted out between the Trump organization and the district attorney's office when these, when these concerns were raised. Instead, the district attorney turns around without, without continuing through that process and, you know, fires off a congressional subpoena to the So I want to just turn briefly back again to some of the questioning that my colleagues, um, uh, have, uh, uh, engaged in about the plausibility standard. Uh, and, um, I saw in your brief that you, uh, cited to, to my concurrence and alliance for which I thank you, uh, Mr. Consovoy, which, in which I said that the plausibility threshold is exceedingly low. Um, but, uh, I, I think that subsequent decisions since, uh, that concurrent, uh, particularly this last term and, uh, this term, uh, may have overtaken us so that the, um, plausibility standard is a little higher, uh, than what, what I might've announced in, uh, or said it was in the lives. Um, if that's true, that is that it's the plausibility standard is a little bit higher. And for example, um, as, uh, just as well, uh, suggested, um, the existence of an equally plausible explanation, um, is, is enough to, uh, render, um, the allegations of the complaint implausible, uh, or, um, uh, allegations that we can reject, uh, as stated in the claim, then, then what's your argument? Just assume that that's true because I think that your argument rests on a, an exceedingly low threshold of possibility with which I, you know, agree, but I don't think it's, uh, it's, it exists anymore. Sorry, if I can just clarify one, aspect of your question. So I don't understand any, any member of this court or, or any party to be asserting that if there are two equally plausible alternatives that the complaint fails, not just under, under your concurrence, but under literally any decision interpreting it's false since it's been issued. Uh, I think the argument was that the alternative has to be so obviously the only plausible explanation that it defeats an otherwise well-set allegation. If your honor is saying that if there are two equally plausible alternatives, we lose. I think that's just, there's no case that supports that, not from this term last year or any other, but if the argument, if the question is, do you lose? You disagree with that, right? Yes, I do. I do. And I, okay. Yeah. The square is a non-bond decision in Ashcroft. Uh, that is, that is law and, and every circuit has so held that if there are competing, plausible alternatives, and that, that happens in many, I'm sure as you're on a note, that happens in many, many cases, you know, was this, did the person run the stop sign or not? You know, the complaint pleads that the person ran the stop sign to defend things. They have plausible reasons to suggest you didn't. That's why we have back binders, but, but the question is if it's so obviously one, not the other, that is sort of a narrow exception under Iqbal, but I don't think the district attorney can, can, can get home on that. Just, I don't think it's close. Why shouldn't we require, um, uh, a, an allegation. And then if, if we do require that, I'd like to see where it is that the grand jury investigation is, um, uh, was not only limited maybe at the beginning to the 2016 Calen payments, uh, but it's currently limited and can only be, be limited to those payments. Uh, your honor, we, we believe we pled that it is so limited, uh, most specifically in paragraphs 12 to 15 of the second amended complaint. Uh, the evidence for that, the factual inference, I'm sorry, go ahead. Oh, sorry. The factual inference for that, again, the Trump organization subpoena was issued only one month before this subpoena was issued. Now the district attorney wants to point to basically, I think was, was an internet search for every article he could find about alleged wrongdoing about the president. And then I think adopts what I think is, I guess, I guess why shouldn't we, why shouldn't we, uh, require, um, as a matter of possibilities, uh, matter of frankly, of just, uh, reality, uh, an allegation, a specific allegation that the, um, uh, scope of the investigation is not only limited, but, uh, it's frozen in time. I have not seen that in this complaint. Um, because as we, I think all know, um, grand jury investigations grow over time as more information comes in. Uh, and, um, uh, there's, there's, I think that that's a natural, um, conclusion that every grand jury investigation, particularly of this importance will, um, uh, to grow both in terms of, uh, the nature of the possible charges that the grand jury is investigating, uh, and in terms of, um, the documents and witnesses and so on that may be of interest to the grand jury. What, why, and that's the natural perception, um, in the, in the ordinary course, in my experience, uh, and given that, why should we need a grand jury investigation that's unique in that? It it's stuck. It did not expand beyond the, uh, 2016 phone payments. No, I think that would, that would create a problem with rule eight to begin. Uh, well, it says the short and plain statement of the case, uh, and no heightened pleading standard. I think that amounts to a heightened pleading standard, uh, that would, uh, create a sea change in the law. Second, and the honor is far better. I'm sorry. It's far better position than me, certainly to, to know how grand juries work, but I would be deeply concerned if there was a presumption in the law that every investigation always expands. If you, the grand jury always looks for more and doesn't ever, uh, confine itself to the subject matter, uh, for which it was convened to investigate. And here, I think, uh, I would encourage the court not to, to, to, you know, make this kind of change in the law, uh, through an, what is a rather artificial plausibility, uh, uh, debate between the parties, uh, had the district attorney answered. I think we wouldn't be trying to guess behind what's door number two. We would just be having an ordinary process and we wouldn't need to think about making major legal changes simply because the district attorney decided to file a motion to dismiss. And one final point, Mr. Constable, and then, um, uh, I'm done. Um, do you agree? I take it that you do not agree that the presumption of validity, uh, associated with grand jury investigations and subpoenas rattle apply to it. It currently by here at the motion to the misstage that is, that is our position. We think it's, it's fully supported in the law. It's an evidentiary presumption, uh, not a legal pleadings requirement. Uh, and as it does have, I don't, but I don't want to, I don't want it to seem as if we don't think it has any relevance at all. Uh, when you look at the standard for challenging grand jury subpoenas on the merits, there's no question that the presumption of validity, uh, has been infused into that, uh, as your honor pointed out in terms of the test we need to meet, but it doesn't create, uh, doesn't alter rule eight. It doesn't override it ball. Uh, and it's really all that's before the court right now. Thank you. Thank you very much. Just get them. I have a further question. Um, that's without speaking. Um, I don't understand the proposition, uh, that the, that requests for documents that cover a number of years and cover operations in many places is in any way suggestive of overbreadth. Um, when one is investigating tax returns, um, uh, at least in, at least in, in many most circumstances, a U S taxpayer is responsible for worldwide income. And, um, uh, I mean that it could turn out, especially when there are corporations involved, it could turn out to be otherwise. It could turn out that, that some foreign operations are, are not covered by a U S parent or a U S owners tax obligations. But, um, uh, when one is investigating the, the, the, um, uh, lawfulness and propriety of the tax returns of a individual or organization that operates worldwide, all of the worldwide operations, uh, are, are pertinent to the accuracy of the tax return. So I don't see any basis for the assumption that a tax, that, that, uh, that a subpoena seeking, seeking the tax returns of a taxpayer, um, is overbroad because it seeks, uh, operations and, and results, uh, uh, in foreign countries. Um, uh, the same is true with respect to years, because there is a, an important linkage. There's a strong linkage, especially in real estate where depreciation is such an important matter. Uh, there's a very big linkage between what is, what is reported for certain years and what is reported for subsequent years. So one needs to go back to prior years to look for consistency with respect to depreciation and things of that sort. Your honor, the problem with the, from my point of view, what those propositions are, they assume a factually controverted, uh, understanding of the nature of this investigation. I think it, what that proposition reduces to is what the district court held and what a time the district attorney argues on appeal, which is as follows. The investigation is definitively quite broad because the subpoena is quite broad and that just gets everything backwards. You can't measure overbreadth both in time or in, or in geographic scope, uh, or in categories of documents until you understand what the nature of the investigation is. And though the district attorney badly wants to resist it, the president has factually alleged and plausibly so that this investigation is limited to certain issues from one year. There is no, and, and, and not about tax returns about, about payments. And there's a dispute over the relevancy of those tax returns. And that's how we got here. Let's say what's your answer to my question. If we don't accept your proposition that the grand jury was investigating only the business transactions in 2016, but if we, if we, if we, if we take it that the grand jury was investigating, um, um, tax, tax issues, and we don't accept your argument as plausible that the grand jury was only investigating, uh, the, the payments to the, to the women to cover up the You, your honor, it would still be overbroad. There are still entire categories of documents that can have no relevance to anything. The district attorney has any jurisdiction to investigate. Uh, he has limited to New York County. Uh, and I only use this one example because I just, again, I think it's just the most obvious the hotel in Washington and its returns and its relationships with, with the, you know, the federal leasing office have nothing to do with anything. Uh, is he a New York taxpayer? He was then, but your honor, the law is clear that the district attorney does not have worldwide jurisdiction over anything in New York taxpayer does anywhere they go in the world. Uh, it is plausibly that the, the accuracy and validity of the tax returns filed in New York is the subject matter of a tax investigation. And to say that, uh, to say that, that, that, that, that a district attorney and a grand jury investigating fraud in, in, in tax returns, uh, can only look at, at business operations that were conducted in, in the, uh, on Manhattan and can't not Queens, not Washington, DC, not Indonesia, not any of the places covered by the tax returns. That seems farfetched. I respectfully disagree, your honor. I think, uh, the Supreme court said in its opinion, in this case that there can be, there can't be fishing expeditions. I don't know how to distinguish what your honor is referring to. How is it a fishing expedition? If a taxpayer's tax returns, uh, cover operations nationwide, worldwide, outside the outside of Manhattan Island, uh, to in, in, in, in investigating the accuracy of those tax returns, uh, to, to look for the documents that, that, that, that the tax returns cover, your honor, because the district attorney has not authorized, nor is there even any allegation that he has engaged even on his own terms in a worldwide audit of, of the president's tax returns, whether it's limited to the Cohen payments or whether it's some other specific allegation, uh, there's the returns would have to be relevant to that. I, I have no authority for the district attorney besides a New York taxpayer can be subject to a worldwide audit. And on that basis alone, a grand jury can have every piece of paper on every tax issue for anywhere in the world that individual does business. I think that's how does the, how does the, if the grand jury and the New York County district attorney is investigating fraud with respect to the, with respect to the, the operations of an Indonesian subsidiary or Indonesian operations of a New York taxpayer, where those operations were covered in the tax return that was filed in New York, how do those get investigated? If you say they're not allowed to, not allowed to subpoena the, the, the documents that are the basis of the tax return that's filed in New York, which affected your honor. I'm sorry if I'm crossing. No, go ahead. I think, I think your honor's question refines it. And I think highlights the key point in the final iteration there, your honor said the New York district attorney is certain actions by a New York company in Indonesia, and therefore it would want or need the Indonesian returns. No, it's investigating the accuracy. If it's investigating fraud with respect to a tax return filed in New York by a New York taxpayer, it needs to investigate all the documents upon which that tax return will be based. And there's no reason why that wouldn't include business operations outside the County of New York, even as far as Indonesia. Right. I think I've maybe given my best answer, which is the one, obviously I just want to make sure I'm clear. We're not conceding that that is what's alleged or is occurring here, but even accepting the hypothetical on its own terms, there would still need to be a specific investigation of certain fraud. And if the subpoena goes beyond that, even in the same category of documents and goes so far beyond that, that it engages in a phishing expedition, I do think that crosses the line. But I think that's probably my best answer. Unless the Court has further questions, I will reserve whatever remaining time I have for rebuttal. I'm sorry. Am I disconnected? I'm not hearing anything. Judge Katzmann? This is Judge Lilley. Are you there? Yes. Can you hear me? Yes, we can hear you now. Yes. Yes. We will now hear from Mr. Dunn. Thank you, Your Honor. May it please the Court, I'm Terry Dunn, representing the Office of the District Attorney of New York County. Your Honors, what's before the Court now are two garden variety common law claims in a 16-page complaint and a rather routine analysis of whether the words in that complaint satisfy 12b6. In that regard, I'd like to bring us back to the simplicity of the District Court's analysis, which really at its core focused on the four corners of the complaint and the lack of any facts to support the inferences the Court's now being asked to draw. Yes, the complaint contains a litany of other inflammatory assertions and inferences, but as some of the questions here already indicated, under the Iqbal and Twombly line of cases, a court must look past speculation and conclusory statements. And here, if you search for the operative facts in the complaint, you'll see there are only three. And I propose to run through them quickly to show why this Court needn't go any further than that. First, it says that published reports indicated initially that our investigation was limited to the 2016 hush money payment. But the complaint doesn't identify a single article that says that and omits to say that the one article it quotes from goes on to point out, as Judge Katzmann indicated, that the full scope of the investigation was unclear. Second, the complaint says the grand jury first issued a narrow subpoena to the Trump organization prior to issuing the Mazars subpoena, which was broader in scope. From this, they argue that the second Mazars subpoena must thus be overbroad. But as some of the questioning, I think, has indicated, this is a non sequitur. There's no logical reason to assume the earlier subpoena defines the scope of the investigation as opposed to the later subpoena. Third, it says the Mazars subpoena adopted language from an earlier congressional subpoena. From this, they argue that the documents requested from Mazars can have no conceivable relevance to the grand jury's inquiry. That too is a non sequitur. It doesn't support an inference that our subpoena didn't itself have a distinct good faith purpose of its own. In short, the complaint rests on a variety of conclusory inferences about the investigation, about politics, about retaliation, and so on. But none of that is supported by what the Supreme Court and Iqbal referred to as factual content. And that's why the court should uphold the district court's dismissal under 12b-6. I'm happy to take questions. Judge LaValle. So my first question is, did the district attorney ever issue a statement to the effect, make a statement to the effect that the grand jury's investigation at the start was limited to the hush payments? Did it say anything that could conceivably be interpreted as saying that that was the scope, that was what the grand jury was investigating? Parts of the investigation, including in the wake of the subpoena, we, of course, made no statements publicly about the scope of the investigation, given the concerns about grand jury secrecy. But second, if your question includes during this litigation, which I think is relevant because it was before the issuance of the second amended complaint, yes, we have, at least generically and consistent with grand jury secrecy, cited in our briefs, the first is from our recent merits brief of page 30. We do assert that the office's investigation goes beyond the scope of the Trump organization subpoena. That's citing our October 29, 19 second circuit brief. And then next from page 11 of our memorandum in opposition, the most recent stay application, we have represented that the appellant has been put on notice throughout this litigation that the grand jury's investigation was not limited to Cohen's 2016 payment. The office has stated the grand jury's investigation, quote, potential violations of state law, including issues beyond those involved in the Cohen matter. So to answer your question, we have not affirmatively described the extent and details of the investigation, but we have affirmatively asserted on the record consistently that it's not limited to the 2016 payment. So at no time, at no time did the district attorney state that the grand jury investigation at its start was limited to those payments or even what's addressed to those payments. Correct, your honor. I note that in the second amended complaint, I believe there's a reference that suggests that our office has admitted, this is a quote, admitted that the subpoena was not designed to meet the needs of the grand jury. That's the complaint at paragraph five. There's no, there's no citation for that, your honor, because it's not true. I can't help but say, I feel like we're through the looking glass here. Yeah. So the, the inference drawn that that was the subject and the sole subject of the grand jury's concerns is solely that the obviously on its face concerned itself with those payments. But that you say is the sole basis for the inference as to what the grand jury was intending to investigate or the DA was intending to investigate. Correct, your honor. And obviously my point is that that inference is not plausible on its face. And of course, as I think your honor has already indicated under the equal and must use its own judicial experience and common sense. And on that basis alone, there is no basis whatsoever to support that inference and it should be rejected by the court. So judge was suggesting earlier that the grand jury investigation has like many grand jury investigations might well have expanded from its initial concern to a different concern. But it seems to me that there's no reason to even engage in the question, whether it expanded because a subpoena was issued in August seeking records that relate that obviously on their face related to the hush money payments. And a month later, it issued a subpoena, which on its face justified the tax returns for a large period of years. And I don't see any reason to draw the inference that the investigation necessarily expanded. It's just that one starts out doing one thing and then one looks at another thing. And there's no reason to assume that both weren't part of the investigation as initially planned. Is that, is there any? No, I don't think I couldn't put it better, Your Honor, putting it differently. The assertion and inference that the first subpoena must necessarily define and limit the scope of any investigation, you know, violates again judicial experience and common sense in a way that just doesn't just render the inference implausible. I suggest it renders the inference preposterous. Now, I was asking your adversary, Mr. Consovoy, some questions a few minutes ago about the scope of the subpoena, the tax-focused subpoena. And he was arguing that it's a fishing expedition if a subpoena addressed to a New York County taxpayer asks for documents that relate to business conducted outside of New York County, as in Washington, D.C., or in foreign countries, or I guess in Queens. I asked why that should be the case when presumably the New York tax returns cover all those business operations that are conducted outside of New York County. What is the basis of any inference that it's overbroad if it seeks the documentation that supports business deductions, business income that derive from operations outside of New York County? Would you address that? Yes, Your Honor. And again, it comes back to the court's ability to apply its own judicial experience and common sense. As I think everybody knows, there's nothing unusual about our office seeking information about out-of-state and foreign transactions that have elements or effects in Manhattan, both task-wise and otherwise. I mean, it can involve either filing of tax returns or providing financial statements to potential lenders, et cetera. If there are falsities that stem from misstated income, for example, from some foreign business or transaction or whatever, you know, since New York City is the center of worldwide commerce, there's lots of international financial activity over which we have jurisdiction because it has either effects or activity within Manhattan. And even more so if, as with the Trump Organization, the company at the center of that activity has its headquarters in Manhattan. That happens all the time, and that's just a matter of experience and common sense. I might correct in my understanding that there is no stay on the enforcement of these subpoenas, that the non-enforcement of the subpoenas is entirely voluntary on the part of the district attorney. No, Your Honor, let me correct that. There were periods in the past during this litigation where we had consented to a stay for various periods for reasons of getting rapid briefing schedules and that kind of thing and addressing the constitutional questions involved. The fact is, in this case, since the filing of the Second Amendment complaint, we did not agree to a further stay because we frankly think it's not warranted given the fact that the complaint does not meet the 12B6 standards and it's basically a cheating delay. For that reason, we did not agree to a stay prior to the motion being made. That led to a briefing and argument on the stay question before this court on September 1st. On September 1st, this court issued a stay during the pendency of this appellate question, and the stay that's now in place, therefore having been imposed by the court, extends through the period in which the court issues a decision on the argument we're having today. I don't think I agree with that. The stay was a stay of the dismissal of the complaint. It was not a stay on the enforcement of the subpoena as I read it. I don't have it in front of me right now, but my understanding was that the stay was the stay of the dismissal of the complaint, but the existence of the complaint doesn't stop the district attorney from enforcing the subpoenas. Am I wrong on that? I was not arguing that issue before this court on September 1st. I was arguing in favor of denial of the stay of the subpoena, and that decision, which was issued that afternoon, I believe stayed the subpoena, which is why we have not acted. Well, do you have the order in front of you? The words of the order, I looked at it in the past and I got the impression, at least that's my court's order of dismissal of the complaint, but that's a very different thing from staying the enforcement of the subpoenas. I do understand and am corrected that I know that you have on certain occasions agreed to stay the enforcement of the subpoena for certain times. For example, I think you agreed to stay it on September 1st, I guess it was, until two days after this court rules on the stay motion, which passed a few days later. But I don't think the stay order that was issued by the stay motion panel said that it was staying enforcement of the subpoenas. It was dismissal of the complaint, and the existence of the complaint doesn't stop the enforcement of the subpoenas. So as I understand it, unless you point to me something that makes it incorrect, as I understand it, the only stay that is in effect right now on the enforcement of the subpoenas is the voluntary non-doing so of the district attorney. Your Honor, I'm afraid I don't have that language in front of me. It was issued as a minute entry and was very brief. But if it helps, I can add that one of the questions addressed in the litigation over the stay question was whether a stay was even the appropriate vehicle to prevent the enforcement of the subpoena, as opposed to a preliminary injunction. And that was one of the arguments that was, I think, foremost in the discussions with the court. And I think that illustrates that we were talking about staying the enforcement of the subpoena, and that's what I believe the court held. But we can check on that, of course. Well, I think that should be looked into because I think it should be known what has been ordered by this court, and whether this court has ordered non-enforcement of the subpoenas, which I did not see, but I may be wrong. Agreed, Your Honor. But just to be clear, we have not voluntarily foreborn at this point at all. We don't think that's an appropriate step, given the status of those litigation and the delays that have been occasioned to date. Judge Katzman, I've finished the questions. Thank you. In your opposition brief, you make references to numerous news articles which talk about the scope of the grand jury investigation. Other than the New York Times article from which the complaint explicitly quotes, why should any of these articles matter at all at this pleading stage when they are not cited, they're not quoted, or otherwise incorporated by reference? Yes, Your Honor. Just to explain, again, under the equal line of cases, obviously it's important for a court to understand the context and make sure that the inferences it's being asked to draw in a complaint are plausible. So whereas here, a party has selectively cited parts of press reports and omitted others, obviously, and that's not what you're addressing, I realize, but it's important for a court to know what the full report says, which is why we cited the New York Times article in particular. With regard to the other articles, given the other misstatements in the complaint, like the limitation about the hush money payments, et cetera, we believe it was appropriate for the court to be aware of those articles and, if necessary, to take judicial notice of them to see that those assertions in the complaint are unreasonable on their face. I think that the court is well-positioned and authorized to take judicial notice of the articles, but frankly, I don't think that's necessary for purposes of affirming the district court decision. In other words, the articles certainly confirm and corroborate what we're saying about the implausibility of the inferences being suggested here, but they don't need to be and, frankly, that's consistent with what the district court did as well. May I ask you another question? Do we need, in your view, to have some referential scope of the grand jury investigation in order to assess the overbreath claim? I don't think so, Your Honor. I mean, the fact that it's indeed difficult to challenge a grand jury claims is by design, after all. It reflects, under the R Enterprises case, the presumption of regularity, the need for the grand jury to pursue every lead, and the fact that it's done in secret. So it's not supposed to be a public or adversarial proceeding. Putting it differently, the recipient of a subpoena just doesn't have a right to go to court and demand to be told what an investigation is all about. And similarly, so I don't think the court needs some sort of frame of reference here because it's not appropriate in the first place for the challenging party here to be given a frame of reference. It's just not part of the process. It doesn't mean there's no oversight whatsoever or that overbreath can never be actually reviewed by a court. So, for example, I say if the Mazars subpoena here had been issued by a local prosecutor in, say, Cleveland with no apparent connection to the company or transactions at issue there, a court might well decide that, applying its common sense and judicial experience, that a question had been raised to overcome the presumption and to require an in-camera submission by the prosecutor, which would be at that stage the appropriate vehicle. Now, regardless of whether we think it is likely, what's the basis for us to say that it is implausible that an elected prosecutor might seek to use the grand jury subpoena process for an improper political purpose? Well, if that's the extent of the assertion, Your Honor, I'd say that's just nothing but speculation. If there were facts alleged that supported the notion that there was a political motivation here, for example, public statements by a prosecutor or a prosecutor could say, my goal is to put this company out of business or tying it to electoral politics or possibilities, then maybe that, too, would overcome the presumption of validity and raise a question in the court's mind that would require further inquiry. Again, I think that would be an in-camera inquiry, not full-blown discovery. But absent those kind of facts, simply to say, sometimes prosecutors act with political motivations, and therefore that's a well-pled fact that supports inquiry here and discovery here, that's not how it works, Your Honor. If we, another line of questioning, if we were to credit the President's allegation that the district attorney decided to mirror the Congressional subpoenas for the sake of efficiency rather than because of the needs of his investigation, then how can, how can we not find that the President has stated an overbread claim? Your Honor, I think that, I mean, the fact that we have made statements that one of the reasons to adopt language from the House subpoena is to make it more efficient for Mazars to give our office and the grand jury the same materials that we were seeking, I mean, that is not inconsistent with the notion that that's a good basis to do it and doesn't demonstrate overbreadth. In fact, again, using judicial experience and common sense, that's the kind of thing that does happen all the time, and the inference that that somehow demonstrates bad faith is simply not plausible. And I think the explanation that we have given, which, again, the Court can take notice of just using its common sense and experience, is sufficient to render the proposed inference implausible here. That's what we've tried to explain. Now, a last question for you. There is the language of high respect for the President's quote-unquote Supreme Court's decision. What does that mean? Your Honor, I think it's the same, the same point that goes along with the phrase particularly meticulous and frankly the ordinary citizen language, which the Court was inquiring about earlier. I think all it means is that there's no heightened legal standard that gets applied in a situation like this where a President is being treated as an ordinary litigant in terms of pleading purposes and legal standard purposes. But in all of those instances, talking about the high respect for the President or the fact that he's not ordinary, all of those concepts boil down to, you know, nonetheless, you have to realize that this person has an important and unique job, and you need to make sure you're paying special attention not to, you know, to give him deference, not to interfere with his timetable, with his schedule, to make sure that it doesn't disrupt his day job. But otherwise, legally, he's treated as an ordinary citizen. Thank you. Judge Loyer. Thank you, Judge Katzmann. And just to follow up on that, Mr. Dunn, and good morning. It appears to me, and this was the subject of some discussion during the motion documents in early September, it appears to me that another way in which the courts, at least in this case, have been solicitous of the fact that we're permitted to file a motion to dismiss in lieu of a motion to quash. Is that correct? It is, Your Honor. I think the word the district court used was it's atypical, that ordinarily would be a motion to quash. But here, he has been permitted to bring a civil litigation to challenge a grand jury subpoena, which is at least atypical, if not improper. And arguably, that is a bit of a higher standard or a different standard that no other citizens get to pursue. Nonetheless, as they say, it is what it is. We're not suggesting that this proceeding need to be converted somehow into a motion to quash, because we think that both with the presumption of regularity and validity, basically the same standard applies here. And that even under the 12 v. 6 standard that applies to a civil litigation like this, the same result would ensue, which is that the grand jury subpoena would not be quashed. So you have, I think, helpfully referred us to common sense and judicial experience, which is, I think, important in any context in assessing these allegations and the plausibility of those allegations. But of course, Mr. Consovoy is pointing to the allegations themselves. How do we weigh those two things? That is, when you ask us to use our judicial experience, and in some cases, actually employ the judicial notice device, how does that square with the allegations and the plausibility standards that we announced in prior cases? Your Honor, I think we agree that the EFAL standard doesn't permit a court to choose among competing factual inferences that are, each of them, plausible. I think the courts have held, at least as I understand it, that that really is the role of the fact finder. But here, what we're talking about is that where a competing obvious inference based upon the court's experience and common sense, and the record, of course, where a competing inference is more reasonable, so much so that it renders the proffered inference implausible. And that's where the court is bound to ignore the implausible one that's been proffered in the complaint. And that's the situation here. I don't know if that answers the court's question. Yes, that's helpful. And I have no further questions. Thank you. Thank you. Judge LaValle, do you have any further questions? No, I don't. Thank you, Mr. Dunn. We'll now hear from Mr. Consovoy in rebuttal. Thank you, Your Honor. Really briefly, Judge LaValle, I wanted to clear up the issue with the stay. I think there was an oversight by my friend, Mr. Dunn, and I'm sure it was not intentional, but in the district court on remand, and this is at document 52 of the district court at pages 9 to 10, he agreed to stay in force from his subpoena until the district court's judgment. This court's, until seven days after that judgment was final, this court's stay suspended that judgment, which is why there is appropriately a stay of the subpoena right now. This is exactly what happened in the congressional cases when the Supreme Court issued stays there. On the questions before the court, you say he agreed, he agreed to do what? District attorney will forbear on enforcing the subpoena through including seven calendar days after the date of the decision by this court. That decision has now been suspended by the issuance of the stay by this court, so that's why we have a stay. If I could briefly turn to the merits before this court. Wait, so I don't understand where that leaves us. Is there in effect right now either an agreement by the DA to stay the enforcement of subpoenas or a judicial order that stays the enforcement of the subpoenas? There is a judicial order that is tied to his agreement. This is what happened with Congress as well. Congress agreed to stay enforcement pending, and when a stay was granted by the Supreme Court, that rendered the subpoena unenforceable. What does the stay issued by the court say? It stayed the judgment. I don't have the exact language in front of me, Your Honor, but it stayed the district court's judgment, like any stay does. Well, how does staying the judgment stay the enforcement of the subpoenas? Because the district attorney tied enforceability of subpoenas to the issuance of that judgment. This is all addressed in our state papers, Your Honor. If I, with the court's permission, just respond briefly to the merits of the appeal before this court. I would just like to add that I would like to ask both parties to submit promptly, like within three days, three, four days, addressing exactly this issue, exactly addressing whether there is a stay in effect, either by the consent of the district attorney or by the existence of any court order that stays the enforcement of the subpoena. So at least everybody knows what we're talking about, whether we're talking about a stay that is in existence or whether it's simply a voluntary or mistaken assumption on the part of the district attorney. Thank you. Thank you. We'll, of course, abide by any brief order this court issues on any issue. On the merits, I would note that neither district attorney, well, the district attorney has not attempted to defend the district court's confusion of immunity and these new claims on remand. That in itself is an error that requires making of the decision below. District court said that these were claims that had already been decided and dismissal was preordained. That error infected its entire analysis and should be corrected. Second, I think the discussion with my friend highlights that what he is asking this court to do is rewrite all of its law and ruling from both fall and after. He uses words like it could be broader. It's unclear whether it's broader. Everybody knows that investigations expand. We told you elsewhere in other filings that are not the complaint. There are press reports that you can look at. Our actions are not inconsistent with these are not the words that defeat plausible allegations. These are words that confirm the credit, his explanations, most of which come from outside the record over the well-played allegations of the complaint. Judicial experience and common sense do not make the president's claims implausible. It is quite plausible that the only subject that has been revealed to be part of this investigation remains its focus. If at summary judgments, the district attorney has every opportunity to litigate the facts, but he is not entitled to litigate them at this stage. And finally, I do have to point out the idea that a subpoena like this, the president's records copied from the house oversight committee word for word effectively and issued under the offices of a local prosecutor quote happens all the time is remarkable. Do you actually allege an improper political motivation? We do allege it. We have not focused on it on appeal. We have alleged motivation. We have alleged that it was done for at least efficiency reasons. Well, we can quibble about that. But other than efficiency, some other improper political motivation, is that alleged somewhere? I think to answer the question, we have alleged that it was done in retaliation for the Trump organization's unwillingness to produce the tax returns as part of the subpoena to it. So that's not necessarily, as you point out, not political necessarily, but may happen in the context of any case. Right. There are concerns here, of course, about politics intruding, given the fever pitch of interest in getting the president tax returns, as we pointed out in the complaint. But as your honor, I'm sure knows, motive is notoriously difficult to plead. And even under ICFAW, motive is at the lowest ebb of what is required at the rule 12 stage, because it is intensely factual. And so obviously, once this case moves past the motive, we'll be litigated and we'll see what's what. But at a minimum, we think it's improper, both for retaliation reasons and because efficiency is not a basis for engaging in efficient exposition. So just so that I understand, with respect to your ultimate position about the extremely limited scope, as you allege, of the investigation, your view is that it's very clear that the investigation was limited to the 2016 payments and that there was no other component of that investigation at the time that the statements made that you rely on were made and that it has not expanded. We are correct. We are. We're alleging that it is about those payments and that has not expanded. And the article, as Judge Katzen pointed out, that is the only article that is referenced in the complaint, says that. And the district attorney tries to work away from that by saying, well, it also says it's unclear whether it's expanded, which again, we can rely on the statements in the article as a hearsay statement in the context of a motion to dismiss. Is that correct? We cite the portions of the article in our complaint. That was entirely appropriate. That's what you're saying. Yeah. We're just talking about the complaints here. What's the complaint alleged? The district attorney, if I might just briefly just elaborate, Your Honor, the district attorney wants to look at other parts of the article. We can't, but we actually think it helps us. So it's fine if the court does. Okay. Thank you. Thank you, Mr. Consovoy. Thank you, Mr. Dunn. I'll argue. Before we end, I would like to ask if the presiding judge, if Judge Katzen would direct the parties at whatever date the presiding judge finds appropriate, but I think it should be very soon, to give us a brief letter setting forth the question, whether there is anything in effect right now that stays the enforcement of the subpoenas, whether it is an agreement of the district attorney stated on the record or whether it is an order of the court so that there can be clarity as to whether the non-enforcement of the subpoenas going forward is voluntary on the part of the district attorney or is pursuant to a prior agreement or is pursuant to an order of the court. I so direct, and I think Tuesday at noon should be plenty of time. That's fine for our office, Your Honor. As well with us, Your Honor. Thank you. And it should be accompanied, whatever is written in support should be accompanied, of course, by the exact text of the statements or orders from which the argued inference is drawn. Thank you. Thank you all for your good arguments. The court appreciates them. The court will reserve decision. The other cases on the calendar are on submission. The clerk will adjourn court. The court stands adjourned.